Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1046 | **DATE** | 6/23/2004 |
| **CASE TITLE** | United States ex rel. Brent Gear vs. Emergency Medical Assoc. of Illinois, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion to Dismiss

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Before the court is Defendants' Motion to Dismiss [43-1][44-1] brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 9(b). For the reasons stated on the attached Opinion and Order, Defendants' motion [43-1][44-1] is DENIED. (See attached.)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JUN 25 2004 date docketed | |
| ✓ | Docketing to mail notices. | | 49 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials | 2004 JUN 23 PM 5:10 U.S. DISTRICT COURT CLERK Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, )
ex rel. DR. BRENT GEAR, )
)
Plaintiff, )
)
v. ) Case No. 00 C 1046
) Judge Charles R. Norgle
EMERGENCY MEDICAL ASSOCIATES )
OF ILLINOIS, INC. and )
ILLINOIS/INDIANA EM-1 MEDICAL )
SERVICES, S.C., )
)
Defendants. )

DOCKETED

JUN 2 5 2004

## OPINION AND ORDER

Plaintiff Brent Gear, D.O. (hereinafter "Dr. Gear" or "Relator") brings this qui tam lawsuit under the False Claims Act, 31 U.S.C. § 3729 et seq., against Defendants Emergency Medical Associates of Illinois, Inc. and Illinois/Indiana EM-1 Medical Services, S.C. (collectively "EmCare"). EmCare now moves to dismiss Plaintiff's Second Amended Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and 31 U.S.C. § 3730(e)(4), and for failure to plead fraud with particularity pursuant to Fed. R. Civ. P. 9(b). For the following reasons, EmCare's motion is denied.

## I. BACKGROUND

Beginning in June 1997, Dr. Gear participated as a resident in Midwestern University's ("Midwestern") graduate medical education ("GME") residency program. As a resident[1], Dr. Gear

---

[1] A resident is a medical school graduate who gains required experience in a chosen field of practice through an apprenticeship program known as a "residency."

1



was responsible for diagnosing and treating patients while working under the direct physical supervision of an attending physician.[2] As the program required, Dr. Gear worked a minimum of 18 supervised shifts per month at various hospital emergency rooms, all of which were participants in Midwestern's GME residency program. For the work performed within the scope of his residency, Midwestern paid Dr. Gear a salary. This salary, which ranged from $29,000 to $33,000 annually regardless of how many hours he actually worked, was determined pursuant to a contract ("Resident Contract") between Dr. Gear and Midwestern. Dr. Gear successfully completed Midwestern's GME residency program in June 2000.

Defendant EmCare provides emergency medical and administrative staffing services to various hospitals throughout the United States, including those which participate in Midwestern's GME residency program. EmCare uses both contract physicians and residents to staff these emergency rooms. Pursuant to contracts between EmCare and the various hospitals participating in Midwestern's GME residency program, EmCare receives reimbursement for claims made under the Supplementary Medical Insurance Program for the Aged and Disabled, Title XVIII of the Social Security Act, 42 U.S.C. § 1395j et seq. ("Medicare").

Medicare is a federally funded health insurance program that serves certain disabled people, as well as people age 65 and above. The program reimburses providers who care for Medicare patients in two ways. First, Medicare Part A funds the hospital's institutional health costs associated with each patient. This includes such costs as patient room and board, nursing, resident salaries, and

---

[2] An attending physician is a licensed physician who has successfully completed all residency requirements.

2

other inpatient care costs. Second, Medicare Part B covers medical services provided on a fee-for-service basis such as physician services, medical supplies, and diagnostic/laboratory tests.

Medicare reimbursements for costs associated with GME residency programs are funded through a combination of both Part A and Part B. Essentially, Part A reimburses a provider for general costs associated with the residency program, including resident salaries. For example, when a resident working within the scope of his residency program performs a physical examination on a Medicare patient, the cost of this examination is treated as a general cost of the hospital's residency program. As such, it is reimbursable under Medicare Part A. In contrast, Part B reimburses a provider for the specific services performed by attending physicians. In certain instances, a hospital may bill Medicare Part B for attending physician services which are actually conducted by residents working within the scope of their residency programs; however, to do so the residents must be in the physical presence of a teaching physician at the time the services are performed.[3] Additionally, senior residents who qualify and become licensed with the state may work outside of their residency program as attending physicians. In such instances, the hospital may bill Medicare Part B for these services.

On February 22, 2000, Dr. Gear filed a complaint individually, and on behalf of the United States, seeking relief under the False Claims Act, 31 U.S.C. § 3729 et seq., for billing violations he allegedly discovered while working as a resident in Midwestern's GME residency program. After

---

[3]Prior to 1995, the law was unclear as to whether Medicare Part B required the teaching physician to be physically present during the resident's examination of a Medicare patient. On December 8, 1995, the Secretary of Health and Human Services issued regulations clarifying the physical presence requirement. See 42 C.F.R. § 415.172 (effective July 1, 1996). For a more detailed discussion on the history of Medicare's billing requirements imposed on teaching hospitals, see Association of American Medical Colleges v. United States, 217 F.3d 770, 773-78 (9th Cir. 1999).

conducting a two-year investigation, the Government filed its Notice of Election to Decline to Intervene on August 21, 2002.

Choosing to proceed on his own, Dr. Gear filed his First Amended Complaint on December 13, 2002. At the Government's request, the court kept numerous documents related to this case under seal until November 3, 2003. EmCare then moved to dismiss Dr. Gear's First Amended Complaint on various grounds, including those raised in the present motion. In response, Dr. Gear sought leave to file his Second Amended Complaint, which the court granted on December 1, 2003.

In his Second Amended Complaint, Dr. Gear alleges that EmCare willfully and deliberately overcharged the United States Government for hospital emergency room services provided to Medicare patients which were performed by student doctors. Specifically, Dr. Gear alleges that for a period of at least three years, EmCare improperly billed Medicare for attending physician services which were actually conducted by unsupervised residents working within the scope of Midwestern's GME residency program. Because these unsupervised residents were working to obtain credit in their residency programs, Dr. Gear alleges that Medicare actually paid twice for their services. Once under Part A to cover the cost of the resident's salary, and once under Part B to cover the costs of the attending physician services which were performed by the residents.

On February 4, 2004, EmCare moved to dismiss Dr. Gear's Second Amended Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and 31 U.S.C. § 3730(e)(4), and for failure to plead fraud with particularity pursuant to Fed. R. Civ. P. 9(b). EmCare's motion is fully briefed and ready for ruling.

## II. DISCUSSION

The False Claims Act ("FCA") establishes civil penalties for any person who files "a false or fraudulent claim for payment or approval" with the United States Government. 31 U.S.C. § 3729(a)(1); see also United States ex rel Mathews v. Bank of Farmington, 166 F.3d 853, 866 (7th Cir. 1999). The FCA may be enforced by either the Attorney General of the United States or by a private person, known as a relator. See United States ex rel. Chandler v. Cook County, Illinois, 277 F.3d 969, 973 (7th Cir. 2002). An action brought by a relator is designated as a qui tam lawsuit, and it is initially brought on behalf of both the relator and the United States Government. See id. If the Government declines to intervene in the lawsuit, the relator may proceed on his own and will receive a portion of the Government's recovery if he ultimately prevails. See id. The relator's reward can amount to 25 to 30 percent of the judgment or settlement. See United States ex rel. Lu v. Ou, – F.3d –, 2004 WL 1093973, *1, (7th Cir. May 18, 2004).

Since the Civil War, qui tam suits have been part of the FCA scheme for preventing fraud against the federal government. See United States ex rel. Lamers v. City of Green Bay, 168 F.3d 1013, 1016 (7th Cir. 1999). Congress enacted the qui tam provision of the FCA to encourage individuals with knowledge of government fraud to come forward and report the fraudulent conduct. See Mathews, 166 F.3d at 858 ("Congress wanted to reward private individuals who take significant risks to bring wrongdoing to light, to break conspiracies of silence among employees of malfeasors, and to encourage whistle blowing and disclosure of fraud.").

Over the years, Congress discovered the need to limit the opportunities by which individuals could bring a qui tam action under the FCA. See Lamers, 168 F.3d at 1016. In 1986, Congress added several jurisdictional bars to the FCA to resolve the tension between encouraging people to

come forward with information about government fraud and preventing parasitic lawsuits. See Mathews, 166 F.3d at 858. One such bar is § 3730(e)(4)(A), which prohibits the court from having jurisdiction over actions based upon certain public disclosures. Specifically, § 3730(e)(4)(A) states:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

To determine whether § 3730(e)(4)(A) bars the relator's claim, the court must consider three factors: "(1) whether the relator's actions have been publicly disclosed; (2) if so, whether the lawsuit is 'based upon' such public disclosure; and (3) if so, whether the relator is an 'original source' of the information contained within the public disclosures." United States ex rel. Feingold v. Adminastar Federal, Inc., 324 F.3d 492, 495 (7th Cir. 2003) (citing Mathews, 166 F.3d at 859). The court must address these factors in order, with the threshold inquiry being whether the relator's allegations have been publically disclosed. See Kennard v. Comstock Resources, Inc., 363 F.3d 1039, 1042 (10th Cir. 2004) (indicating that consideration of the original source issue is unnecessary unless the court first finds that the lawsuit is based upon a public disclosure); see also Mathews, 166 F.3d at 859 (same). If the court finds that the relator's lawsuit is based upon a public disclosure, then § 3730(e)(4)(A) will limit the court's power to adjudicate the claims unless the relator was the original source of the information contained within the public disclosure. See Feingold, 324 F.3d at 497.

## A. Dismissal for Lack of Subject Matter Jurisdiction

EmCare moves to dismiss Dr. Gear's Second Amended Complaint pursuant to Rule 12(b)(1) and 31 U.S.C. § 3730(e)(4) for lack of subject matter jurisdiction. In essence, EmCare argues that Dr. Gear has not met his burden of establishing subject matter jurisdiction because he cannot satisfy the requirements of § 3730(e)(4). In support of its position, EmCare submits additional documentation to establish that Dr. Gear's lawsuit is based on numerous public disclosures, all of which EmCare argues indicate he is not the original source. EmCare further agues that because the question is jurisdictional, the court may consider this additional documentation when ruling on its motion to dismiss. In response, Dr. Gear contends, among other things, that EmCare improperly raises this jurisdictional issue in its motion under Rule 12(b)(1).

Federal Rule of Procedure 12(b)(1) specifically provides for the dismissal of claims over which the federal court lacks subject matter jurisdiction. "Fundamental to our law is the understanding that '[f]ederal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.'" Transit Express, Inc. v. Ettinger, 246 F.3d 1018, 1023 (7th Cir. 2001) (quoting Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986)); see also Allen v. Wright, 468 U.S. 737, 750 (1984). The party invoking federal jurisdiction bears the burden of establishing that it has satisfied the jurisdictional requirements of the court. See Kontos v. United States Dept. of Labor, 826 F.2d 573, 576 (7th Cir. 1987). For the purposes of a motion to dismiss for lack of subject matter jurisdiction, the court generally accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. See Martin v. Shalala, 63 F.3d 497, 501 (7th Cir.1995) (citing Rueth v. United States Environmental Protection Agency, 13 F.3d 227, 227 (7th

Cir.1993)). However, if a factual question surfaces as to whether the court has subject matter jurisdiction, the court may look beyond the complaint and view any extraneous evidence submitted by the parties. See United Transp. Union v. Gateway Western Ry. Co., 78 F.3d 1208, 1210 (7th Cir. 1996) (citing Bowyer v. United States Dep't of Air Force, 875 F.2d 632, 635 (7th Cir. 1989)).

Although the above standard applies to most motions to dismiss for lack of subject matter jurisdiction, EmCare's reliance on Rule 12(b)(1) in this instance is misplaced. In general, § 3730(e)(4) provides that the court does not have jurisdiction over claims brought under the FCA which are based on public information, unless the relator is the original source of the information. See 31 U.S.C. §§ 3730(e)(4)(A) and (B). Although § 3730(e)(4)(A) uses the term "jurisdiction," the Supreme Court has said that it actually raises an issue of substantive law. See Hughes Aircraft Co. v. United States, 520 U.S. 939, 950-51 (1997) (stating that § 3730(e)(4)(A) not only speaks to the power of the court, but to the substantive rights of the parties as well). When the court's subject matter jurisdiction is based upon the same statute that provides the substantive claim, the jurisdictional question is necessarily intertwined with the merits of the case. See United Phosphorus, Ltd. v. Angus Chemical Co., 322 F.3d 942, 946 (7th Cir. 2003). In such an instance, the court should assume jurisdiction and deal with the merits. See id.; see also United States v. Martin, 147 F.3d 529, 532 (7th Cir. 1998). While the Seventh Circuit has not directly addressed the question of whether Rule 12(b)(1) provides the proper standard of review for jurisdictional claims under the FCA, it has recognized the Court's holding in Hughes when considering a question under § 3730(e)(4)(A). See Feingold, 324 F.3d at 494. Moreover, the court has stated that it is not likely "that § 3730(e)(4)(A) uses the word 'jurisdiction' in the sense of adjudicatory power," but rather it determines who may speak on behalf of the Government and who may attempt to collect an award.

United States ex rel. Fallon v. Accudyne Corp., 97 F.3d 937, 941 (7th Cir. 1996) (indicating that federal jurisdiction under the FCA is actually conferred by 31 U.S.C. §§ 1331, 1345, and 3732(a)).

Accordingly, because the jurisdictional issue of public disclosure is necessarily intertwined with the merits of this litigation, the court has jurisdiction over Dr. Gear's claims. The issue of whether Dr. Gear's Second Amended Complaint satisfies the requirements of § 3730(e)(4)(A) should not be addressed under the standards of Rule 12(b)(1); rather, the issue should be addressed under the standards of either a motion to dismiss under Rule 12(b)(6) or a motion for summary judgment under Rule 56. See United States ex rel. Laird v. Lockheed Martin Engineering and Science Services Co., 336 F.3d 346, 350 (5th Cir. 2003); see also United States ex rel. Ramseyer v. Century Healthcare Corp., 90 F.3d 1514, 1518 (10th Cir. 1998).

Additionally, because EmCare's motion relies on matters submitted beyond those contained in Dr. Gear's Second Amended Complaint, the court cannot construe EmCare's motion as one under Rule 12(b)(6). See R.J. Corman Derailment Services, LLC v. International Union, 335 F.3d 643, 647 (7th Cir. 2003) (stating that the court's reliance on matters outside the pleadings requires it to convert the motion to dismiss to a motion for summary judgment). Thus, the question of whether the FCA's public disclosure bar applies should be decided in a motion for summary judgment, not in the present motion to dismiss.[4]

---

[4] Although not considered for purposes of this motion, EmCare has attached numerous documents which indicate that as of 1995, the Government was aware of other Medicare double-billing schemes, similar to those alleged in Dr. Gear's Second Amended Complaint, being executed at various teaching hospitals across the United States. This documentation also indicates that the Government's involvement and investigations into these matters has had industry wide implications. See EmCare's Mot. to Dismiss, Ex. H - U. If either party believes that this information is sufficient to dispose of the jurisdictional issue of public disclosure, it should move for summary judgment expeditiously so that the court can decide the issue on its merits.

## B. Dismissal for Failing to Comply with Federal Rule of Procedure 9(b)

EmCare also moves to dismiss Dr. Gear's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 9(b), arguing that it fails to plead fraud with particularity. Rule 9(b) requires that "circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). The circumstances of fraud "include the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." General Elec. Capital v. Lease Resolution, 128 F.3d 1074, 1078 (7th Cir. 1997) (internal quotation marks and citations omitted). In other words, Rule 9(b) requires the plaintiff to plead "the who, what, when, where, and how: the first paragraph of any newspaper story." DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990).

The Seventh Circuit has stated that Rule 9(b)'s heightened pleading standard applies to allegations of fraud made under the FCA. See United States ex rel. Garst v. Lockheed-Martin Corp., 328 F.3d 374, 376 (7th Cir. 2003). In doing so, it has indicated that Rule 9(b) must be read in conjunction with Rule 8(a), which provides for a short and plain statement of the claim. See id. (stating that Rules 8(a) and 9(b) are not in conflict because it is possible to write a short statement narrating the claim while still including all of the required particulars). Nevertheless, Rule 9(b) requires that the plaintiff allege specific activity which constitutes the fraud so that the defendant may file an effective responsive pleading. Lachmund v. ADM Investor Services, Inc., 191 F.3d 777, 783 (7th Cir. 1999). Such a requirement is consistent with the policies behind the Rule 9(b), which serve to: (1) protect a defendant's reputation from harm; (2) minimize "strike suits" and "fishing expeditions"; and (3) provide notice of the claim to the adverse party. Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 777 (7th Cir. 1994) (citations omitted).

In this case, the court finds that Dr. Gear's Second Amended Complaint alleges EmCare's fraudulent conduct with sufficient particularity as required by Rule 9(b). The Second Amended Complaint alleges that from June 1997 to June 2000, EmCare wilfully and intentionally submitted fraudulent bills to Medicare for the purpose of seeking payment for physician services performed in EmCare-staffed emergency rooms. Specifically, it alleges that EmCare billed Medicare for physician services performed by unsupervised resident doctors who were working within the scope of their residency program, while at the same time these unsupervised resident doctors were obtaining residency credit and being paid by Medicare pursuant to their Residency Contracts. According to the Second Amended Complaint, this practice resulted in Medicare paying twice for the same physician services provided by the unsupervised resident doctors. Further, the Second Amended Complaint identifies the particular hospitals involved, the particular University involved, the particular residents involved, and the specific regulations which were allegedly violated. All of this information gives EmCare adequate notice of the specific activities constituting the alleged fraud, thereby placing EmCare in position to file an effective responsive pleading. This is all Rule 9(b) requires. See Lachmund, 191 F.3d at 783. As a result, Dr. Gear's Second Amended Complaint alleges fraud under the FCA with sufficient particularity.

## III. CONCLUSION

For the foregoing reasons, EmCare's Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) and 31 U.S.C. § 3730(e)(4), and for Failure to Plead Fraud with Particularity Pursuant to Fed. R. Civ. P. 9(b) is denied.

IT IS SO ORDERED.

ENTER:

Charles Ronald Norgle, Judge
United States District Court

DATED: 6/23/04