

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel.<br>DR. BRENT GEAR,<br><br>Plaintiff,<br><br>v.<br><br>EMERGENCY MEDICAL ASSOCIATES<br>OF ILLINOIS, INC., and<br>ILLINOIS/INDIANA EM-1<br>MEDICAL SERVICES, S.C.,<br><br>Defendants. | Case No. 00 C 1046<br><br>Honorable Charles R. Norgle |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

On February 22, 2000, Plaintiff Dr. Brent Gear ("Gear") filed a Complaint individually, and on behalf of the United States, alleging that Defendants Emergency Medical Associates of Illinois, Inc., and Illinois/Indiana EM-1 Medical Services, S.C. ("Defendants") violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, by fraudulently billing Medicare for the services of medical Residents. Presently before the court is Defendants' Motion for Summary Judgment. For the following reasons, Defendants' Motion for Summary Judgment is granted.

**I. BACKGROUND[1]**

**A. Facts**

Defendants are both Illinois corporations that, *inter alia*, provide physicians to hospital

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text. Undisputed background facts regarding medical Residents and Attending Physicians are taken from Plaintiff's Complaints.

1

emergency rooms. Plaintiff Gear is a graduate of Midwestern University's emergency medicine program. During the time period relevant to this case, Gear was fulfilling his Residency requirements in emergency medicine by working in the emergency rooms of three Chicago area hospitals: St. Bernard Hospital, Grant Hospital, and Edgewater Hospital. Defendants provided physicians, one of whom was Gear, to these hospitals' emergency rooms.

The core of Gear's allegations is that, in violation of federal regulations, Defendants fraudulently billed Medicare for the services of Senior Residents participating in Midwestern's Residency program between the dates of June 1997 and June 2000. In his Complaints (Gear filed a Complaint, and two Amended Complaints), Gear explains this alleged scheme in great detail. The court will briefly summarize these allegations.

"Residents" are medical school graduates who gain experience through apprenticeship programs in hospitals. "Attending Physicians" are licensed doctors who have completed their residency programs. Residents' medical services are generally not reimbursable by Medicare, but Medicare does provide some funds to hospitals to offset the costs of Residency programs. See 42 C.F.R. § 415.208(b)(1). Attending Physicians' services generally are reimbursable by Medicare. It is possible, however, for a Resident to legitimately obtain a state medical license, and thereby obtain "Senior Resident" status. These Senior Residents can then legitimately work as Attending Physicians; their services then become reimbursable by Medicare. Senior Residents who work as Attending Physicians, however, may only receive payment as Attending Physicians for work done outside of their Residency Programs. In other words, Senior Residents may not work as Attending Physicians during Residency hours, but they may "moonlight," or work as Attending Physicians "outside the scope" of their Residencies. See 42 C.F.R. § 415.208.

2

Gear alleges that he and his fellow Senior Residents who worked as Attending Physicians did not do so outside the scope of their Residencies. In fact, Gear alleges, they were encouraged by Defendants to work as Attending Physicians during their Residency hours. Gear alleges that he and other Senior Residents accepted separate salaries from Defendants as both Senior Residents and Attending Physicians. Finally, Gear alleges, Defendants then fraudulently double-billed Medicare for his and other Senior Residents' services as both Residents and Attending Physicians. Gear also alleges that Defendants improperly "upcoded" their claims - that is, billed for more complex (and therefore more expensive) procedures than were actually performed.

Defendants assert that Gear's allegations were publically disclosed a number of times prior to the filing of this suit. Defendants assert that these allegations were disclosed in, *inter alia*, a 1998 United States General Accounting Office Report, and several media outlets such as *American Medical News*, *Physician's News Digest*, and *Physician's Weekly*. Plaintiff acknowledges that these publications mention an alleged widespread Resident/Attending Physician billing scandal at teaching hospitals, but asserts that these publications do not directly refer to Defendants, or publically disclose wrongdoing by these specific Defendants.

Gear filed suit against Defendants, alleging that Defendants' billing practices violated the FCA, 31 U.S.C. § 3729 *et seq.*, which prohibits presenting a "fraudulent claim for payment or approval" to the United States Government. 31 U.S.C. § 3729(a)(1). Gear filed this action individually, and on behalf of the United States Government. The type of action Gear filed is known as a *qui tam* action. As will be explained more fully below, a *qui tam* action is brought by an individual, on behalf of the United States, alleging that some entity has defrauded the United States Government. United States and Matthews v. Bank of Farmington, 166 F.3d 853, 857-58

3

(7th Cir. 1999). A *qui tam* plaintiff may be eligible to receive up to thirty percent of the proceeds of a successful claim. Id.; 31 U.S.C. § 3730(d).

**B. Procedural History**

Gear filed suit against the Defendants on February 22, 2000. The Attorney General then investigated Gear's allegations, but the Government decided not to intervene in the suit. Def.'s Mot. for Summ. J., Ex. C. Gear later amended his Complaint twice. Following Gear's Second Amended Complaint, Defendants filed a Motion to Dismiss, pursuant to, *inter alia*, Rule 12(b)(1). The court denied that Motion, but indicated that the issues raised in Defendants' Rule 12(b)(1) Motion to Dismiss would be more properly addressed in a motion for summary judgment. See United States ex. rel. Gear v. Emergency Medical Associates of Illinois, Inc. and Illinois/Indiana EM-1 Medical Services, S.C., No. 00-1046, 2004 U.S. Dist. LEXIS 11729, at *16 (June 23, 2004).[2] Defendants then, on September 3, 2004, filed their Motion for Summary Judgment. This Motion is fully briefed and before the court.

---

[2] In that decision, the court explained that it had jurisdiction over this matter in the sense that it had the power to determine whether this suit met the requirements of 31 U.S.C. § 3730(e)(4), and that Defendants' Motion to Dismiss under Rule 12(b)(1) must therefore fail. Gear, 2004 U.S. Dist. LEXIS 11729, at *14-15. The court then invited a motion for summary judgment under Rule 56 in order to determine whether, under the "jurisdictional" limits of 31 U.S.C. § 3730(e)(4), Gear had the right to proceed on behalf of the government in this matter. Id. at *16. The court now concludes, for the reasons explained below, that Gear does not have this right. The court now holds that, under the "jurisdictional" requirements of 31 U.S.C. § 3730(e)(4), Gear is barred from representing the Government in this case, or receiving a portion of any recovery. See United States ex rel. Fallon v. Accudyne Corp., 97 F.3d 937, 941 (7th Cir. 1996) ("we doubt that § 3730(e)(4)(A) uses the word 'jurisdiction' in the sense of adjudicatory power . . . . In context, the word appears to mean that once information becomes public, only the Attorney General and a relator who is an 'original source' may represent the United States.").

4

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000); see also Vukadinovich v. Bd. of Sch. Tr.'s of N. Newton School Corp., 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See FED. R. CIV. P. 56(c); see also Gil v. Reed, 381 F.3d 649, 651 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hull, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Gil, 381 F.3d at 651. However, the inferences construed in the non-moving party's favor must be drawn from specific facts

identified in the record that support that party's position. See Szymanski, 231 F.3d at 364.

Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hosp. and Med. Ctr., 328 F.3d 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

**B. *Qui Tam* Actions and the FCA**

*Qui tam* is a shortened version of the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means "who pursues this action on our Lord King's behalf as well as his own." Vermont Agency of Natural Resources v. United States ex. rel. Stevens, 529 U.S. 765, 769 n.1 (2000). A *qui tam* suit is thus an action filed by an individual plaintiff (a "relator"), brought on behalf of the United States government. Id.; see also Matthews, 166 F.3d at 857. Several federal statutes authorize these suits, and provide that the individual bringing the action will recoup a percentage of the Government's recovery. See, e.g., 35 U.S.C. § 292 (providing a cause of action and recovery share against entities that falsely mark patented items).

One of the federal statutes that authorizes *qui tam* actions is the FCA, 31 U.S.C. § 3729 *et seq*. This statute provides, *inter alia*, that "[a]ny person who . . . conspires to defraud the Government by getting a false or fraudulent claim allowed or paid . . . is liable to the United States Government for a civil penalty of not less that $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains . . . ." 31 U.S.C. § 3729(a); see also Matthews, 166 F.3d at 857 (the FCA provides "criminal and civil penalties for presenting a false claim for payment against the United States"). The *qui tam* portion of the FCA provides, in part, "[a] person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government." 31

U.S.C. § 3730(b)(1). In enacting the *qui tam* provisions of the FCA, "Congress wanted to reward private individuals who take significant personal risks to bring wrongdoing to light . . . and to encourage whistleblowing and disclosure of fraud." Matthews, 166 F.3d at 858.

The *qui tam* plaintiff under the FCA therefore essentially acts as a "whistleblower" by filing suit on behalf of the United States. Jonathan A. Willens, *Commentary*, § 3730: Civil Actions for False Claims, at LEXSTAT 31 US NITA § 3730. The *qui tam* provisions of the FCA indicate that the Government has a sixty-day period in which to intervene in the suit. 31 U.S.C. § 3730(b)(2). The Government may seek to extend this period in order to investigate the relator's claim. If the Government intervenes, its attorneys take control of the case. Id. § 3730(b)(4). If the Government does not intervene, the relator may proceed on his or her own. Id. § 3730(c)(3).

Whether or not the Government decides to intervene in the suit, the relator is eligible to receive a percentage of any recovery. See Rifkin v. Bear Stearns & Co., Inc., 248 F.3d 628, 633 (7th Cir. 2001) ("a federal *qui tam* statute in effect creates an assignment of the federal government's claim to the relator . . . ."). If the Government intervenes, the relator will receive between fifteen and twenty-five percent of the recovery. Id. § 3730(d)(1). If not, the relator will receive between twenty-five and thirty percent of the recovery. Id. § 3730(d)(2). *Qui tam* actions have thus "made millionaires of most successful FCA whistleblowers and resulted in the recovery of more than $3 billion." Elletta S. Callahan and Terry M. Dworkin, *The State of State Whistleblower Protection*, 38 AM. BUS. L. J. 99, 101 (2000). "The average qui tam whistleblower's award is $1.005 million." Id. at n.11.

There are several jurisdictional bars to *qui tam* actions under the FCA. For the purposes of this case, the relevant jurisdictional bar is the "public disclosure" bar. See 31 U.S.C. §

7

3730(e)(4). That statute provides, in part, "[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a . . . Government [General] Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." Id. § 3730(e)(4)(A). As the Seventh Circuit has explained, however, the term "jurisdiction" as used in this statute does not refer to the adjudicatory power of courts, but rather to the right of a *qui tam* plaintiff to represent the government in a particular suit. United States ex rel. Fallon v. Accudyne Corp., 97 F.3d 937, 941 (7th Cir. 1996). Courts may therefore allow a *qui tam* plaintiff under the FCA to represent the government only if the claim passes the following three part test: (1) were the plaintiff's allegations "publicly disclosed;" (2) if so, is the suit "based upon" that "publicly disclosed" information; (3) if so, is the plaintiff the Attorney General, or an "original source" of that "publically disclosed" information? Matthews, 166 F.3d at 859.

The Seventh Circuit has held that a *qui tam* suit fails part one of this test when "the critical elements exposing the transaction as fraudulent are placed in the public domain." United States ex rel. Feingold v. Adminastar Federal, Inc., 324 F.3d 492, 495 (7th Cir. 2003). Under part two of the three part test, a suit is "based upon public disclosures when it 'both depends essentially upon publicly disclosed information and is actually derived from such information.'" Id. at 497 (quoting Matthews, 166 F.3d at 864.) If the *qui tam* plaintiff's allegations have been publicly disclosed, and the suit is based upon that publicly disclosed information, the suit will therefore be barred on "jurisdictional" grounds unless the plaintiff is an "original source" of the information. 31 U.S.C. § 3730(e)(4); Matthews, 166 F.3d at 859.

8

Under § 3730(e)(4)(B), an "'original source' means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section . . . ." The *qui tam* plaintiff must therefore satisfy two requirements to be considered an original source. An original source must first be "someone who would have learned of the allegation or transactions independently of public disclosure." Feingold, 324 F.3d at 497 (quoting Matthews, 166 F.3d at 865). An original source must also be someone who has "voluntarily provided the information to the Government before filing an action . . . ." 31 U.S.C. § 3730(e)(4)(B); Feingold, 324 F.3d at 497; Matthews, 166 F.3d at 865. The original source rule thus acts as an exception to the public disclosure bar: a *qui tam* suit may proceed if the relator is an original source, even when the information on which the relator has based his or her suit has been publicly disclosed and the suit is based on those public disclosures. Feingold, 324 F.3d at 494-95; Matthews, 166 F.3d at 864-65.

## C. Under the "Jurisdictional" Requirements of 31 U.S.C. § 3730(e)(4), Gear is Barred from Representing the Government in this Matter

In order for this court to allow Gear to represent the Government in this matter, (1) Gear's allegations must not have been publicly disclosed, and (2) Gear's claim must not be based on any such public disclosures. See 31 U.S.C. § 3730(e)(4); Matthews, 166 F.3d at 859. However, if Gear can show that he is an "original source" of these allegations, the court will allow Gear to proceed with this suit regardless of whether the allegations were publicly disclosed, or whether Gear based his suit on these disclosures. See 31 U.S.C. § 3730(e)(4)(B); Feingold, 324 F.3d at

497; Matthews, 166 F.3d at 859.[3]

Defendants assert that Gear's allegations were publicly disclosed in (1) a United States General Accounting Office ("GAO") report, and (2) various news media sources. In their Motion for Summary Judgment, Defendants include a GAO report which describes concerns with potentially "widespread" problems with the inappropriate billing of Medicare for the services of medical Residents, and which reviews an Inspector General's audit of teaching hospitals' compliance with Medicare billing rules. Def.'s Mot. for Sum. J., Ex. G. Defendants also include fifteen examples of media stories detailing allegedly improper billing of Medicare for Residents' services. For example, the September 14, 1998 edition of *Physician's Weekly* discussed the GAO report, and both the March 1997 and May 1998 issues of *Physician's News Digest* explored ongoing problems with improper billing of Medicare (including double-billing and coding problems) for Residents' services. Defendants have thus provided the court with a GAO report, and fifteen media reports, in which allegations of fraudulent billing of Medicare for the medical services of Residents are discussed in detail. See id., Ex's. G-V. There is therefore no question as to whether the allegations Gear raised in his suit were publicly disclosed. See Feingold, 324 F.3d at 495.

Gear, however, asserts that since the disclosures do not name the Defendants, and since the disclosures do not specifically refer to "resident services" and the exact type of medicine Gear practices, these disclosures are not genuinely "public" under § 3730(e)(4)(A). The public

---

[3] The court notes that, while the statutory language appears to frame this matter in "jurisdictional" terms, "what we are actually dealing with is an issue of substantive law." Feingold, 324 F.3d at 494 (citing Hughes Aircraft Co. v. United States, 520 U.S. 939, 950-51 (1997)).

10

disclosures Defendants point to, however, expose in detail the nature of the alleged widespread scheme to defraud Medicare: in teaching hospital settings, with the full knowledge of the hospitals, medical Residents routinely acted as Attending Physicians; Medicare was then allegedly double-billed for the services of both Residents and Attending Physicians; in addition, these hospitals allegedly "upcoded" procedures done by these Residents in order to fraudulently increase the amount billed to Medicare. See Def.'s Mot. for Summ. J., Ex's. G-V. The "critical elements" of this scheme were therefore publicly exposed, and whether Defendants were specifically named in these disclosures is irrelevant. See Feingold, 324 F.3d at 495. The court therefore finds that Gear's allegations were "publicly disclosed" within the meaning of 31 U.S.C. § 3730(e)(4)(A).

Gear next asserts that his suit was not based on these public disclosures. However, the only evidence he points to in support of this assertion is a self-serving affidavit attached to his Response to Defendants' Motion for Summary Judgment. However, this affidavit contains nothing more than the bare contentions that (1) Gear did not base this suit on these public disclosures, and (2) he was never aware of Government investigations into the billing procedures of medical school Residency programs. Pl.'s Resp., Ex. B, ¶ 2. The Seventh Circuit takes a dim view of these sorts of affidavits. "[A] plaintiff cannot defeat summary judgment by submitting a self-serving affidavit that contains the bald assertion of the general truth of a particular matter." Fanslow v. Chi. Mfg. Ctr., Inc. 384 F.3d 469, 483 (7th Cir. 2004) (internal quotation marks and citations omitted). Moreover, Gear was a Resident Editor of the American College of Emergency Physicians' publication *24/7* during 1999. In the Summer of 1999, *24/7* published an article noting alleged irregularities in teaching hospitals' billing of Medicare for the services of

Residents. Def.'s Reply in Supp. of Their Mot. for Summ. J., Ex. AA. Given Gear's position as Resident Editor of this publication, Gear's assertion that he knew nothing about the public disclosures of these allegations strains credibility. The court therefore finds that Gear based his suit on publicly disclosed allegations.

Because the court has found (1) that Gear's allegations were publicly disclosed, and (2), that his suit was based on these public disclosures, Gear cannot proceed with this action unless he shows that he is an "original source" of these allegations. See 31 U.S.C. § 3730(e)(4); Matthews, 166 F.3d at 859. Gear must therefore have had "direct and independent knowledge of the information on which the allegations are based *and* [have] voluntarily provided the information to the Government before filing [this] action." See 31 U.S.C. § 3730(e)(4)(B) (emphasis added). Gear, however, admits that he "has never claimed to have spoken to the Government about his concerns prior to filing this lawsuit . . . ." Pl.'s Resp. to Def.'s Mot. for Summ. J., 15. The court therefore finds that Gear was not an "original source" of these allegations.

After viewing the record in a light most favorable to the non-moving party, Gil, 381 F.3d at 651, but taking into account the Seventh Circuit's admonition that "[c]onclusory allegations alone cannot defeat a motion for summary judgment," Thomas, 328 F.3d at 892-93, the court holds that, under the requirements of 31 U.S.C. § 3730(e)(4), Gear may not proceed on behalf of the Government in this matter, as (1) Gear's allegations were publicly disclosed, (2) this case was based on those public disclosures, and (3) Gear was not an "original source" of these allegations. See 31 U.S.C. § 3730(e)(4); Matthews, 166 F.3d at 859. Defendants' Motion for Summary Judgment is therefore granted.

## III. CONCLUSION

For the foregoing reasons, under the "jurisdictional" requirements of 31 U.S.C. § 3730(e)(4), Gear is barred from representing the Government in this action. Defendants' Motion for Summary Judgment is therefore granted.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 4-13-05